UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
HAYDEE A. RAMIREZ *f/k/a* HAYDEE A. GARCIA,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-4073 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Haydee A. Ramirez, formerly known as Haydee A. Garcia, commenced the above-captioned action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "SSA"). (Compl., Docket Entry No. 1.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Administrative Law Judge Brien Horan (the "ALJ") committed error in his determination that Plaintiff is not entitled to DIB under Title II of the SSA because his assessment that she was not disabled was not supported by substantial evidence and he failed to properly evaluate her subjective complaints. (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 19; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") 1, annexed to Pl.'s Mot., Docket Entry No. 19-1.) The Commissioner cross-moves for judgment on the pleadings, arguing that substantial evidence supported the ALJ's findings and that the ALJ properly evaluated Plaintiff's subjective complaints. (Comm'r's Mot. for J. on the

Pleadings ("Comm'r's Mot."), Docket Entry No. 17; Comm'r's Mem. in Supp. of Comm'r's Mot. ("Comm'r's Mem.") 1, annexed to Comm'r's Mot., Docket Entry No. 17-1.)

For the reasons set forth below, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion.

## I. Background

Plaintiff was born in 1964. (Certified Admin. R. ("R.") 21, Docket Entry No. 12.) Plaintiff has a high school education, (R. 191), and worked at an airline for almost thirty years, the last fifteen of which she spent as a customer service representative and gate attendant, (R. 39–40).

On December 12, 2016, Plaintiff applied for DIB, alleging that she has suffered from a disability since September 9, 2015, when she was fifty-one years old. (R. 13, 156–57.) In her disability report, Plaintiff alleged disability due to back and neck problems and bilateral carpal tunnel syndrome. (R. 156, 190.) On March 17, 2017, the Social Security Administration denied Plaintiff's claim, and Plaintiff subsequently requested a hearing. (R. 66–74, 106–07.) On May 13, 2019, Plaintiff appeared with an attorney and testified before the ALJ. (R. 28–65.) By decision dated June 5, 2019, the ALJ determined that Plaintiff was not disabled from September 9, 2015, Plaintiff's alleged onset date, through the date of the decision. (R. 10–22.) On June 29, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering his decision final. (R. 1–4.) Plaintiff timely appealed to this Court. (*See* Compl.)

### a. Hearing before the ALJ

At the May 13, 2019 administrative hearing, Plaintiff testified that while she initially worked as a baggage clerk, the airline reassigned her after spinal surgery to a customer service

role, which required her to use both hands to open and close heavy doors and frequently check or carry luggage from the boarding gate to the plane. (R. 39–42.) Plaintiff experiences burning and tingling in both hands like "pins and needles." (R. 43.) She also experiences hand weakness and frequently drops things. (R. 43.) Plaintiff's doctor instructed her to wear wrist bands to combat the pain and weakness in her arms. (R. 44.) Plaintiff has pain radiating from her neck into her arms, and she cannot lift heavy items. (R. 44–45.) She has neck and back pain during humid rainy weather. (R. 44.) She also has back pain radiating down into her legs, which become numb if she walks for one hour. (R. 44–45.) She can only stand for fifteen minutes or less, and she cannot ride a bicycle because she cannot properly grasp the handles. (R. 45–46.) Although surgical procedures eased some of the pain, Plaintiff still experiences tingling in both hands. (R. 52.) She drops silverware and plates and has since substituted them with disposable plastic wares. (R. 48.) Plaintiff did not receive treatment after 2018 because her worker's compensation benefits ended. (R. 54.) Plaintiff uses hot and cold compresses rather than pain medication, (R. 48), and lies down to rest two to three times per day, (R. 49).

    The vocational expert Joseph Goodman (the "VE") testified that an individual with Plaintiff's age, education, and past work experience, and with a full range of light work except frequent balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs, no climbing of ladders, ropes and scaffolds, frequent pushing and pulling with the right upper extremity, frequent handling and fingering with the bilateral upper extremity, and occasional exposure to humidity, could perform Plaintiff's past work as a customer service representative/ gate attendant if it did not include exposure to extreme cold and heat. (R. 55–56.) The VE also identified other unskilled light and sedentary work that the individual could perform, such as extrusion operator, sub assembler, and sorter. (R. 57, 60.) If such an individual were limited to

occasional handling and fingering with the bilateral hands, there would be no past work, nor any light work, but there would be available sedentary work such as a surveillance system monitor or call-out operator, (R. 56–60), and if limited to less than occasional fingering and handling with the bilateral hands, there would be no work, (R. 63). In addition, if such an individual were absent two or more days per month or were off task more than ten percent of the workday due to pain issues, there would be no work. (R. 60–61.)

  **b. Function report**

In a written function report dated January 18, 2017, Plaintiff stated that she needed assistance getting dressed depending on the clothing, her daughter helped her bathe and perform hair care, and she had difficulty using a knife when feeding herself. (R. 200.) Plaintiff's daughter did the shopping and prepared her food, but Plaintiff could make her bed and perform light household chores. (R. 201–02.) Plaintiff could not lift due to hand pain and lack of strength, and standing and walking caused leg cramping such that she could walk one mile before requiring rest. (R. 204–05.) Plaintiff took over-the-counter pain medication that relieved her pain within twenty minutes and that lasted for a few hours. (R. 207.) Plaintiff did not have any issues paying attention, finishing tasks, or following written or verbal instructions. (R. 205–06.) She drove, ventured out alone, went to church, read, ate, and slept. (R. 199, 202–03.)

  **c. The ALJ's decision**

The ALJ conducted the five-step sequential analysis required by the SSA.[1] 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

---

[1] The five-step sequential process outlined by the SSA considers: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

activity since September 9, 2015, the alleged disability onset date. (R. 15.) At step two, he found that Plaintiff has the severe impairments of major joints disfunction and spine disorder. (R. 15.) At step three, he found that Plaintiff's impairments do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. 15–16.) At step four, he concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work except "(1) frequent balancing, stooping, kneeling, crouching, crawling and climbing of ramps or stairs and no climbing of ladders, ropes or scaffolds; (2) frequent pushing and pulling with the right upper extremity; and (3) no more than frequent handling and fingering with the bilateral upper extremities." (R. 16.) The ALJ found that, given this assessment, Plaintiff retains the RFC to perform past relevant work as a gate attendant, as well as serve in other sedentary roles including surveillance system monitor and call-out operator, which require skills acquired in the claimant's past relevant work but no additional skills. (R. 20–21.) Accordingly, the ALJ concluded that Plaintiff was "not disabled." (R. 21.)

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276

---

equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

F.3d 103, 108 (2d Cir. 2002)), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)). In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)). If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at 112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

  **b. The ALJ failed to properly weigh the opinion evidence**

Plaintiff argues that the ALJ's step-four finding is not supported by substantial evidence because he failed to properly weigh the opinion evidence. (Pl.'s Mem. 11.) In support, Plaintiff contends that the ALJ provided no specific reasons nor explanation for why the opinions of orthopedic surgeon Mitchell Keschner, M.D., were "not incorporated into the RFC," (*id.* at 13), and if the ALJ implicitly disregarded Dr. Keschner's opinions, then the finding disregards Dr. Keschner's post-operative statements and objective findings of manipulative and exertional limitations, (*id.* at 14). Plaintiff also contends that the ALJ did not provide any explanation or

6

cite to any particular treatment records in rejecting the opinion of consultative examiner Syeda Asad, M.D., regarding Plaintiff's manipulative limitations. (*Id.* at 17.) In addition, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints. (*Id.* at 19–23.)

The Commissioner argues that substantial evidence supports the ALJ's RFC finding because the ALJ implicitly rejected Dr. Keschner's opinion when he examined "subsequent evidence reflecting post-surgical treatment, examination findings, and additional medical opinions more probative of Plaintiff['s] functional limitations and abilities after surgical intervention." (Comm'r's Mem. 12.) The Commissioner also contends that the ALJ properly discussed medical findings and opinions by Dr. Asad. (*Id.* at 13.) Finally, the Commissioner argues that the ALJ properly assessed Plaintiff's subjective complaints and properly found them "not entirely consistent with the medical and other evidence." (*Id.* at 16.)

"[A] treating physician's statement that the claimant is disabled cannot itself be determinative." *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (same). However, an ALJ "must follow" specific procedures "in determining the appropriate weight to assign a treating physician's opinion."[2] *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *see also Ferraro v. Saul*, 806 F. App'x 13, 14 (2d Cir. 2020) (holding that "[u]nder

---

[2] On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416). The "new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). Because Plaintiff's claim was filed prior to that date, the Court refers to versions of the regulations that were in effect prior to March 27, 2017. *See White v. Berryhill*, No. 17-CV-4524, 2018 WL 4783974, at *4 n.4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the [c]ourt reviews the ALJ's decision under the earlier regulations because the [p]laintiff's application was filed before the new regulations went into effect.").

Second Circuit precedent and the applicable regulations," the ALJ must follow the two-step procedure laid out in *Estrella* to determine the appropriate weight to assign to the opinion of a treating physician). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella*, 925 F.3d at 95. "[T]he opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (alterations in original) (quoting *Burgess*, 537 F.3d at 128); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015) (discussing the treating physician rule); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam))).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. In deciding how much weight to assign to the opinion, the ALJ "must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95–96 (alteration in original) (quoting *Selian*, 708 F.3d at 418); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)) (discussing the factors). "At both steps, the ALJ must 'give good reasons . . . for the weight [it gives the] treating source's [medical] opinion.'" *Estrella*, 925 F.3d at 96 (alterations in original) (quoting *Halloran*, 362

8

F.3d at 32). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* (quoting *Selian*, 708 F.3d at 419–20). "If 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment],'" the district court is unable to conclude that the procedural error is harmless, and remand is therefore appropriate, so that the ALJ can "comprehensively set forth [its] reasons." *Id.* (alterations in original) (quoting *Halloran*, 362 F.3d at 33); *see also Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012) (noting that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand" (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998))); *Halloran*, 362 F.3d at 32–33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion . . . ."). However, if a "searching review of the record" assures the court that the "substance of the treating physician rule was not traversed," the court will affirm. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

Because the ALJ failed to explain why he did not assign any weight to Dr. Keschner's opinion, the ALJ violated the treating physician rule. Plaintiff met with Dr. Keschner on no less than ten separate occasions between September of 2016 and April of 2017, and during these visits Dr. Keschner performed four separate surgeries, including bilateral carpal tunnel release procedures and right and left trigger thumb release procedures, as well as five physical examinations, post-surgical examinations, and prepared a medical source statement.[3] *See Fontanez v. Colvin*, No. 16-CV-1300, 2017 WL 4334127, at \*18 (E.D.N.Y. Sept. 28, 2017) (finding that a physician the plaintiff "regularly met with . . . for numerous psychotherapy sessions" was a treating physician). During these meetings, Plaintiff repeatedly complained of

---

[3] (R. 328–29, 331, 372–73, 380–83, 398–401, 412–13, 440–45, 447–48.)

numbness and tingling in her hands, thumbs, and fingers, and Dr. Keschner noted on at least five occasions that Plaintiff experienced limited wrist extension and flexion, tenderness to palpation of the thumb CMC joint, decreased sensation to touch at the wrist nerve, and inability to flex the IP joint. (*See* R. 329–30, 387, 399, 442–43, 448, 451, 455.) In a Medical Source Statement ("MSS") dated January 13, 2017, Dr. Keschner stated that Plaintiff is likely to be "off task" approximately ten percent of the day. (R. 372.) Dr. Keschner also noted that, during flare ups, which are rare, Plaintiff has no ability to work in a competitive work environment; could walk a half mile; could sit or stand for two hours at a time for a total of four hours per day; could not lift; could bend, stoop and balance occasionally; could never complete fine or gross manipulation with either hand or fingers on either hand; could occasionally reach out and reach overhead with both arms; and rarely needed to rest. (R. 373.) However, the ALJ did not attempt to make any determination as to whether Dr. Keschner's opinion was entitled to controlling weight. (*See* R. 16–20.) Nor did he explicitly consider the *Burgess* factors to determine how much weight should be assigned to the opinion or the reasons for any weight assignment. (*See id.*) Because the ALJ must explicitly consider the otherwise valid opinion of a treating source, the ALJ failed to comply with the treating physician rule, and therefore committed a procedural error. *See Ferraro*, 806 F. App'x at 15 (holding that the ALJ failed to apply the *Burgess* factors or otherwise provide "good reasons" for assigning a reduced weight because "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment'" (quoting *Estrella*, 925 F.3d at 95)); *Hornyak v. Saul*, No. 18-CV-1950, 2020 WL 1910129, at *13 (D. Conn. Apr. 20, 2020) ("In his decision, the ALJ failed to specify the weight he assigned to [the] treating physicians. . . . [and] [f]ailure to do so is legal error." (citing *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 235 (W.D.N.Y.

10

2003))); *Rivera v. Berryhill*, No. 17-CV-991, 2018 WL 4328203, at *14–15 (S.D.N.Y. Sept. 11, 2018) ("Although the ALJ mentioned a few of [the treating physician's] findings, his failure to state expressly what weight, if any, he gave to them provides a separate basis for remand." (first citing *McClean v. Astrue*, 650 F. Supp. 2d 223, 228 (E.D.N.Y. 2009); and then citing *Crothers v. Colvin*, No. 13-CV-4060, 2015 WL 1190167, at *2 (S.D.N.Y. Mar. 16, 2015))); *Fontanez*, 2017 WL 4334127, at *18 ("By failing to assign any weight to [the plaintiff's] treating psychiatrist . . . and by implicitly rejecting [his] diagnoses without providing any reasons for doing so, the ALJ committed error that requires remand." (collecting cases)); *Crothers*, 2015 WL 1190167, at *2 (remanding where the ALJ failed to assign any weight to the plaintiff's treating physician's report); *Dailey*, 277 F. Supp. 2d at 235 ("The ALJ simply does not articulate the reasons for the weight he assigned, if any, to the opinions of [the treating physicians]. This lapse alone constitutes legal error and requires that the case be remanded.").

The Commissioner's assertion that while the ALJ did not specifically weigh Dr. Keschner's pre-surgery opinion, he did so implicitly by discussing evidence reflecting post-surgical treatment, examination findings, and additional medical opinions, (*see* Comm'r's Mem. 12), is insufficient to comply with the treating physician rule. The ALJ did not explicitly assign weight to any component of Dr. Keschner's opinion or provide an explanation for why no weight was assigned under the *Burgess* factors. The ALJ's "implicit" rejection of Dr. Keschner's opinion is insufficient. (Comm'r's Mem. 12); *see Ferraro*, 806 F. App'x at 15 ("[M]erely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'"); *Estrella*, 925 F.3d at 95 (noting that the ALJ must "explicitly consider" factors). These assertions are also belied by the record. After Dr. Keschner performed the bilateral carpal tunnel release procedures in October and November

11

of 2016, he noted on November 23, 2016, that Plaintiff's left "wrist extension is [sixty-five] degrees and flexion is [sixty] degrees" and right "wrist extension is [sixty] degrees and flexion is [seventy-five] degrees," "scar is tender to palpation," "A1 pulley region of the thumb is tender," and "patient is unable to actively flex the IP joint," (R. 330–31); and on January 4, 2017, that Plaintiff's left "wrist extension is [sixty] degrees and flexion is [sixty] degrees. . . . The thumb CMC joint is tender to palpation" and right "wrist extension is [sixty] degrees and flexion is [seventy] degrees . . . . The A1 pulley region of the thumb is tender. . . . The thumb CMC joint is tender to palpation," (R. 328–29).  After Dr. Keschner performed locked right and left trigger thumb release surgeries in March and April of 2017, respectively, he noted on April 5, 2017, that Plaintiff displayed decreased range of motion of the right thumb MP and IP joints, tenderness to the left thumb A1 pulley region, and decreased range of motion of the left thumb MP and IP joints, (R. 444–45); and on April 24, 2017, that Plaintiff's examination revealed residual range of motion loss at the left thumb MP and IP joints, as well as in the right thumb MP and IP joints, (R. 442–43).

Accordingly, because the ALJ failed to assign any weight to Dr. Keschner's opinion or provide an explanation as to why no weight was assigned, the ALJ failed to comply with the treating physician rule.

### c. The ALJ's error was not harmless

The ALJ's error in failing to assign weight to Dr. Keschner's opinion was not harmless. At the administrative hearing, the VE testified that an individual with Plaintiff's age, education, and the limitations assessed by the ALJ could perform Plaintiff's past relevant work as a gate attendant and serve in other sedentary roles including surveillance system monitor and call-out operator, which require skills acquired in the claimant's past relevant work but no additional

12

skills. (R. 21.) If such an individual were limited to less than occasional fingering and handling with the bilateral hands, they could not perform any work. (R. 63.) In addition, if such an individual were absent two or more days per month, or were off task more than ten percent of the workday due to pain issues, they could not perform any work. (R. 60–61.) Because the ALJ neither assigned any weight to Dr. Keschner's medical opinion nor explained why no weight was assigned, the Court cannot evaluate whether the ALJ properly determined Plaintiff's capacity to meet the fingering and handling limitations or properly evaluated whether Plaintiff could perform any work depending on her need to be absent from work or off task as detailed by the VE. Therefore, the ALJ's error in discrediting the opinion of Plaintiff's treating physician in this regard was not harmless and requires remand. *See Griffel v. Berryhill*, No. 16-CV-1772, 2017 WL 4286254, at *10 (E.D.N.Y. Sept. 26, 2017) (holding that the ALJ's failure to include a treating physician's uncontradicted opinion on the RFC determination was not harmless); *see also Lesterhuis*, 805 F.3d at 88.[4]

Accordingly, because the ALJ's violation of the treating physician rule was not harmless,

---

[4] Because the Court finds that remand is proper on the basis that the ALJ erred in failing to provide adequate justification for not crediting the opinion of Dr. Keschner, thereby failing to abide by the treating physician rule, the Court does not address the arguments that the ALJ erred by affording less weight to Dr. Asad's opinion regarding Plaintiff's manipulative limitations and that the ALJ erred in disregarding Plaintiff's hearing testimony. *See Griffel v. Berryhill*, No. 16-CV-1772, 2017 WL 4286254, at *10 n.11 (E.D.N.Y. Sept. 26, 2017) (citing *Foxman v. Barnhart*, 157 F. App'x 344, 347–48 (2d Cir. 2005)) (declining to address arguments presented by the parties that were different from the bases underlying the Court's decision to remand); *Christopher B. v. Saul*, No. 19-CV-905, 2020 WL 5587266, at *20 (N.D.N.Y. Sept. 18, 2020) ("[I]n light of the fact that the ALJ's assessment of [the plaintiff's] credibility is inextricably intertwined with the ALJ's evaluation of the treating physician, . . . the [c]ourt is unable to conclude that the ALJ properly evaluated [the plaintiff's] credibility."); *Daniel v. Astrue*, No. 10-CV-5397, 2012 WL 3537019, at *11 (E.D.N.Y. Aug. 14, 2012) (explaining that "[t]he ALJ's determination that [the plaintiff's] allegations were inconsistent with the medical evidence was tainted by the ALJ's failure to properly evaluate the opinions of [the plaintiff's] treating physicians — a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence" (citing *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004))).

the Court grants Plaintiff's motion for remand. *See Rodriguez v. Comm'r of Soc. Sec.*, No. 19-CV-7062, 2021 WL 2219276, at *10–12 (E.D.N.Y. Mar. 29, 2021).

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings. The Commissioner's decision is vacated and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of Court is directed to close this case.

Dated: September 12, 2022
   Brooklyn, New York

              SO ORDERED:

              _____s/ MKB_____
              MARGO K. BRODIE
              United States District Judge